IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEVON WATTS KIRK, | : | |
| Petitioner, | : | 1:15cv-1942 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| DAVID J. EBBERT, | : | |
| Respondent. | : | |

# MEMORANDUM

## May 31, 2016

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Levon Watts Kirk ("Petitioner" or "Kirk"), an inmate incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania. He contends that his due process rights were violated during the course of a prison disciplinary proceeding. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I.     BACKGROUND

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent

intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3.

On December 18, 2014, Kirk received incident report 2662399 charging him with the following Prohibited Code Act violations: Code 203 – Threatening Another with Bodily Harm; Code 208, Tampering with a Security Device; and Code 307, Refusing an Order. (Doc. 7-1, p. 15). Section 11 of the report contained the following description of the incident:

> On 12/18/2014 at approximately 10:50am I was escorting I/M Kirk #12171-042 during the DHO hearings in F-Block. I/M Kirk [] became visibly agitated during the DHO interview process and his actions were threatening in nature. As a precautionary measure, he was then given a direct order to submit to hand restraints to which he complied and was escorted to a holding cage in the 2nd floor recreation area. At which time I/M Kirk [] increased his aggressiveness by stepping through the hand restraints and attempting to remove them,

>kicking the inside of the security cage and by making threatening statement by saying "You'll have to kill me before I kill one of you to get me out of this unit." I/M Kirk [] was then ordered multiple times to stop kicking and to return his hands with [sic] to behind his back [with] negative results.

(*Id*. at 9). He made no comment during the UDC review. (*Id.*). The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") because sanctions unavailable to the UDC were recommended. (*Id.*) Kirk refused to sign both the Notice of Discipline Hearing and the Inmate Rights at Discipline Hearing. (*Id.* at 11, 12). He did not want to call witnesses but requested that Lieutenant Saylor appear as his staff representative. (*Id.* at 11).

At the January 7, 2015 hearing, the DHO informed Kirk that Lieutenant Saylor was not available to represent him because he was the officer who investigated the incident. (*Id.* at 15). Kirk declined the offer to select another staff representative. (*Id.*) He did not request witnesses, presented no documentary evidence, and made no complaints of procedural error. (*Id.*) He testified that "…Section 11 of the incident report is inaccurate. Inmate Kirk testified further, I did step through the cuffs. I didn't make the threat, though. Everything I said had to do with me. I lost my SMU phase and I lost all my privileges. I was really upset." (*Id.*)

The DHO concluded that Kirk committed Prohibited Act Code 208, Interfering with a Security Procedure, and Prohibited Act Code 203, Threatening

3

Another with Bodily Harm when he stepped through his hand restraints and threatened to kill staff. (*Id.* at 16). He considered the incident report, which contained the eyewitness testimony of the reporting officer, Kirk's version of events, his concession that he was "really upset" at the time of the incident because he lost his SMU phase and all his privileges, and his admission that he stepped through the hand restraints. (*Id.*)

With respect to Code 203, the DHO gave greater weight to the officer's written statement that Kirk threatened to kill staff, than to Kirk's claim that he did not make the threat, based on the following:

> [T]he reporting officer was very specific concerning your continued misconduct in section 11 of the incident report; information in section 11 of the incident report demonstrates you communicated your intent to inflict physical harm on a staff member; you became visibly agitated during the incident; your actions during the incident were threatening in nature; your actions compelled staff to submit to hand restraints to you; after you submit[ted] to hand restraints, you stepped through your hand restraints then you attempted to remove your applied hand restraints; you were observed kicking the inside of the security cage, and; you made a verbal threat to kill staff while you continued to kick the inside of your cell.
>
> Your claim you did not make the verbal threat, was found without merit by the DHO. The DHO considers this evidence to be less credible than to which the greater weight is given in this case, for the following reasons: your admission you "stepped through" your applied hand restraints, lends credibility you continued your misconduct, and made the verbal threat attributed to you in section 11 of the incident report; you admittedly were "really upset" at the time of the incident, lending credibility you made the verbal threat; you were informed you were returned to phase 1 of the SMU program, lending further credibility you made the verbal threat, you admittedly

4

> "lost all of you privileges" at the time of the incident, again lending further credibility you made the verbal threat at the time of the incident, and; you were placed in ambulatory restraints due to your continued misconduct. The culmination of your testimony supports you did make the verbal threat.

(*Id.*) The DHO further concluded that his admission that he stepped through the applied hand restraints corroborated the charge of Code 208, Interfering with a security procedure. (*Id.*)

In sanctioning him with a disallowance of twenty-seven days of good conduct time, thirty days disciplinary segregation, and ninety days loss of telephone, visiting, and commissary privileges (suspended 180 days pending clear conduct), on each offense, the DHO reasoned that:

> [Both offenses] inherently jeopardize[] security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong Kirk's period of incarceration. Loss of commissary, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

(*Id.* at 17).

After exhausting all available administrative avenues of review, Kirk filed the instant petition. (Doc. 1, pp. 2, 3).

## II. DISCUSSION

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Because federal inmates possess a liberty interest in good conduct time, *see Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991), the loss of such time in the context of prison discipline proceedings is subject to judicial review. Review, however, is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. *Superintendent v. Hill*, 472 U.S. 445, 45 457. (1985).

The sanction of a loss of good conduct time requires that the inmate receive the following due process protections: 1) written notice of the claimed violation at least twenty-four hours in advance of a hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the

disciplinary action. *See Wolff*, 418 U.S. at 564-72. Based on the background information extracted from the record, it is clear that the *Wolff* due process requirements were satisfied in the matter *sub judice*.

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to support the decision. *Hill*, 472 U.S. at 455; *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

In challenging the sufficiency of the evidence, Kirk contends that: 1. He is actually innocent of the charge because an inmate is incapable of harming staff in the Special Management Unit ("SMU"); 2. The evidence conflicts with statements contained in the incident report; and 3. Staff abused their authority in charging him with Code 208. (Doc. 2, pp. 1-3). He also contends that his appeal of the DHO's decision to general counsel was mishandled. (*Id.* at 3).

With respect to the arguments that an inmate is incapable of harming SMU staff, and that the evidence conflicts with information contained in the incident report, neither argument was raised before the DHO and, as such, is not part of the record. *Hill* constrains the scope of review to evidence in the record before the DHO. Likewise, the procedural irregularities complained of during his appeal of the DHO decision have no bearing on our analysis as they concern conduct that took place outside the context of the DHO hearing. These arguments are wholly without merit.

With respect to his contention that he was excessively charged with a Code 208 violation, according to the record, in arriving at a finding of guilt, the DHO specifically relied on the incident report, which contained the eyewitness testimony of the reporting officer, Kirk's concession that he was very upset over his return to Phase 1 of the SMU program and the loss of privileges, and his admission that he stepped through the restraints. It was concluded this statement, especially, corroborated the charge of Code 208, Interfering with a Security Procedure. (Doc. 7-1, p. 16). It is clear that the finding of guilt has some evidentiary support in the record before the DHO. Consequently, the petition will be denied.

## III.  CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.